Mr. Keratinos, is that the correct pronunciation?  After sustaining his qualifications, the administrative judge independently applied the Douglas factors in MSPB case law to determine whether the penalty imposed, a downgrade to Kraft, was within the tolerable bounds of reasonableness. And it was not. And there is ample support in the record for what the administrative judge did in applying the Douglas factors. I will turn to the record at page 119, which is the cross-examination of Mr. Manley, who is the deciding official. Question, before making your decision as to the remedy in this case, did you have an opportunity to review Mr. Batten's personnel file? No. Did you review his career with the federal government? No, I did not. How many years has he served with the federal government? Do you know? I'm not certain. I think it's 22 or 23 years with the Postal Service, but I don't know. But he had prior service with the federal government before then, did he not? That's my understanding, yes. If I told you that he has 33 years of federal service, would you contest that? I mean, I don't know who I would contest it. So that's a point where the administrative judge and the deciding official applied the same Douglas factor, but the administrative judge correctly applied it because he conducted a de novo hearing and had the correct information based upon the correct examination tested by cross-examination.  Could you help me understand what's going on here with the board? Maybe you understand the background of this and could be helpful. Is it true that the full board is, with some frequency, reversing the decisions of administrative judges that have mitigated penalties? Is that a correct perception or is that not a correct perception? I think there is substance to that, Your Honor, in that they want to support the decisions of the deciding official. And the record in this case indicates that that's a thin reed to stand on with respect to deciding official Manley because he didn't have all the facts and he didn't do much investigation. So what's the legal error that the board made here? The legal error is that they reversed the administrative judge by misapplying their own precedent. The judge, unfortunately, did not cite any decisions, case law in support of his decision, and I don't believe that should be held against Mr. Batman. When the board took that as an opportunity to cite cases in support of their determination, they didn't correctly cite their own body of law, which was developed by this honorable court and the board. This case only involves statements. I mean, a couple of the statements are not very nice and they are offensive and discipline obviously should be imposed. I couldn't find any cases involving statements alone which resulted in anything more than a suspension. And the cases cited by the board involve sexual harassment, touching, as well as statements. And that's the wrong line of cases to rely on. They're ignoring the other precedent in their body of law. And I believe that's inappropriate in this case because the administrative judge in developing a de novo record established that Mr. Batman had an excellent career of 33 years, perfect attendance. And as a result, it also determined that the people who brought the specifications against Mr. Batman had an axe to grind. He found it very troubling that McGee had a special relationship with her regular supervisor. He had been to her house 15 times. Well, how is that a factor in Douglas, under Douglas? Yes. Let's turn to the Douglas factors. In particular, Douglas fact number 11, mitigating circumstances surrounding the offense, such as unusual job tensions, personality problems, mental impairment, harassment, bad faith, malice, or provocation on the part of others involved in the matter. And the evidence in this case indicates that the regular supervisor and McGee basically sandbagged Batman. They didn't give him any notice that they were going to complain about him. But is that what this factor is about? I read this factor as being a kind of provocation mitigating circumstances. So mitigating circumstances surrounding the offense, such as unusual job tensions, personality, bad faith. But in this case, there were none of those mitigating circumstances in connection with your client having been found to have made these statements. You're talking about bad faith that might have been demonstrated when somebody decided to turn him in. Is that really what this Douglas factor is about? Yes. I believe personality is mentioned in the Douglas factor, and that has a lot to do with this case. Personality problems, I read that as that that could mitigate it. If you have a fight with your supervisor, but there have been serious personnel problems, and you get fired for that, then it might be mitigation if there's a history of clash of personalities and so forth. But in this case, you're asking us to take factors, facts, that are completely separate and distinct from the offense here for which he received the penalty and sort of factor those in. I'm accused of destroying massive amounts of property. There's no question. But some supervisor happens to hate me for very ridiculous reasons, and he turned me in because of that. And I really think if he had really liked me, he wouldn't have turned me in. Why is that relevant to whether or not I ought to be fired for what I did? Because this case involves statements, and under the precedent established by this honorable court and by the MSPB, statements don't warrant discharge. I thought you said, maybe I misunderstood. What do you mean? Where are the cases that say that statements don't warrant discharge? Yes. Let's see. They're cited beginning at page 18 of the brief. I cited – the board should have cited page 19, should have cited States v. United States. But you're saying there are cases in which it was held that discharge wasn't warranted as a result of statements. Is that the same thing as statements in general can never warrant a discharge? I couldn't find any. And by citing these cases as an invitation to the government in its responding brief, to come forward with at least one case where statements alone warranted anything more than a suspension. They didn't cite a single case. The case that they cited was statements plus sexual harassment touching. That's an entirely different category of case. The MSPB has imported the principle taken from the EEOC that statement cases are much different than touching cases. Those are much more serious and certainly can lead to discharge because with touching it rises to the actual level of sexual harassment. There's no sexual harassment in this case. What are we supposed to do about that? I mean, you know, maybe that's not fair. Maybe it's not just. But do we sit here to make a decision about whether the penalty was reasonable? I mean, that seems to be – Yes. I believe the answer is yes. And that what's before the administrative judge and before this honorable court is what is the outer boundary of reasonableness in imposing a penalty. And the outer boundary of reasonableness based upon this body of law is – doesn't warrant a downgrade all the way to crack. So we're supposed to do that on our own. I believe you have an independent obligation to review the record, particularly in circumstances where the board miscites its body of law. The board wants to rely upon the deciding official. In this case, the deciding official did not interview Ms. McGee. The allegation was made both to the proposing official and the deciding official by Mr. Batman that he had been sandbagged. He raised that issue, but it was never investigated. But I don't understand. You're not appealing here the merit case. You're not arguing that your client has been held to have made these statements. So what was the need for him to interview Ms. McGee? It was the deciding official that imposed the remedy. The deciding official administers a career service, and he has the obligation to use objective principles in doing so. The deciding official had very little experience in discipline cases. The record is very clear. He only had experience with two cases. There's no evidence that he consulted with anyone that might have additional experience, and he doesn't have a table of penalties to consult with. And so what did he do? He did whatever he wanted to do. It's a question of a person imposing their own opinion rather than a reasoned, objective basis for imposing discipline. And so the judge couldn't really rely on the proposing official. He didn't know very much. He didn't investigate very much as to what the appropriate penalty should be. The judge couldn't rely on a table of penalties because it doesn't exist. The Postal Service doesn't have one. So what does the judge do? He has to rely upon the body of law that has been developed before the Sonoma Court, which presents objective principles that are appropriate for the administration of a civil service system. Is there an MSPB case that says it is not appropriate in the case of a mere statement to impose this kind of discipline on someone? Well, I have it the other way around because those are the only cases that exist. That's Spades, Hill, and Jordan, and Lefebvre. And even in some of these cases— Well, what do those cases hold? What are they? What do they hold? Okay. Well, let's see. I go through it. No, just generally. What do they hold? They hold that the agency erred in imposing a greater penalty for statements. Yes, the agency was reversed because it imposed more than a suspension in statement cases. That's correct. And based on the board's judgment that a penalty—the penalty that was imposed was unreasonable. Yes. But now— Excuse me. Go ahead. Does it matter of the nature of the statement? Apparently not. I couldn't find a single statement case that did not involve actual sexual harassment, that is, touching, that warranted anything more than a suspension. No statement, no group of statements can actually amount to sexual harassment? Perhaps they can, but I don't think they did in this case. Perhaps they can. Yeah, perhaps they can. Okay, but those weren't the statements made in this case. And we know that because an EEO charge was solicited by the post office, and it was dismissed. There was no sexual harassment. What about inappropriate and offensive statements? Well, if you look at the four cases cited, the statements made in this case are not any more inappropriate. I mean, the record is very clear that McGee had—that she wasn't being sexually harassed, that Mr. Batten had no interest in her as a female. It was just that she was offended by the statements, and she didn't immediately go and complain about them. I mean, she went to her supervisor with whom she has a special relationship, and she said, well, let's keep this confidential. And he didn't. He insisted on reporting it, in part because he had access to Brian, because the record shows that Batten was doing a better job than he was. I'd like to say that. All right. Thank you. Mr. Donohue?  Can I please the Court? To answer Judge Dyke's question posed to Petitioner's Counsel, the Board does, in cases, reverse an A.J.'s decision to re-weigh factors. And the reason for that is the standard review, whether it be the A.J., the full Board, or this Court, is to examine whether the citing official, in fact, did weigh all the relevant factors and whether the decisions within the ballot were reasonable. In the absence of a finding that the deciding official didn't consider a factor, the A.J. is not supposed to re-weigh the factors on his own. And for that reason, the A.J. error, and the MSPB stepped in in that case, said that there's no reason for the A.J. to have re-weighed the factors, and as a result, then substitute its judgment on the penalty, which under its regulations and statutes. What about the argument that under Factor 11, that that wasn't considered, and it should have been, because there was some lurking bad faith here with respect to this episode? Well, I would suggest, Your Honor, the statements identified by the Petitioner really only go to whether the charge should have been sustained. To the extent that they go to any fact— I also assume, hypothetically, that we read the decision of the A.J. as applying those to the penalty. What's the answer to Judge Prost's question? I'm not quite sure I understand your question. Well, I think Judge Prost was asking you whether under Factor 11, this conduct of the supervisor, Cooner, was pertinent to the penalty. In fact, and whether the A.J.'s finding that Cooner was using this to get back at the Petitioner because he viewed him as a competitor for promotion to a higher supervisory slot. And I thought you started answering her question by saying that that wasn't part of the penalty decision here. And I was asking you to assume that it was part of the penalty decision. Is that, as Judge Prost asked you, part of Factor 11? I don't believe it is, Your Honor. I think what the A.J. had to do here was identify a factor that wasn't considered. I think all of the things that are mentioned in that one paragraph in the A.J.'s decision, if anything, may go to the seriousness of the charge and the other things that fall under that first factor. And it's very clear here that the deciding official did consider the seriousness of the charge and all of the factors surrounding what happened here. The deciding official also considered Mr. Bowden's significant service with the Postal Service and with the government. No, I understand that. Let me go back to – in the A.J.'s opinion where he – is it he or she? He or she is talking about penalty. They're clearly talking about the reasonableness of the penalty, not the merit. There's a paragraph in there at page 815 which doesn't talk about years of service or whatever. It seems to really reference to the fact that she did not tell him to cut it out, that she was not intimidated by him. She had no reason to be afraid of him. And then he goes on to say, I note that she did not expect any desire to have him disciplined, and she did not report him to whoever, and she expected – that A.J. considered those facts in connection with mitigation of the penalty, correct? Well, I think – I mean she did. I mean the A.J. did. It's in the section, so obviously they would consider. All right. Was that wrong of the A.J. or are these indeed facts that should have been considered by the deciding official? I think it was wrong for the A.J. for two reasons. First of all, it doesn't go to any of the factors under Dovis. And the second reason is I think what the A.J. did was that – and as Petitioner's pointed out, it was a close case of whether the charge should be sustained. The A.J. specifically created the testimony of Mr. Batten and said this was out of character for him, but said at the end of the day, I believe the complaining witness more, and that's why the charge was sustained. I think the A.J. in this case looked at all of the factors involved with the charge and decided this was a close case, and for that reason decided to mitigate the penalty. For that reason, I think the board and the court's pressure would indicate that's inappropriate. The penalty decision itself only should be weighed to determine. But ascribing motivation to the A.J. doesn't really get us that far. I want to know if what the A.J.'s analysis here was appropriate or inappropriate. I think it was inappropriate because it doesn't go to any of the relevant Douglas factors. So if we had a situation here where, let's assume hypothetically, Petitioner's own supervisor, for personal reasons unrelated to the job, was trying to get this guy removed and reported his conduct solely for that purpose, and the person was removed, that on appeal to the board, that the board could not consider that motivation as part of the penalty factor 11? I think that's right, Your Honor. I think that goes only to the question of whether the charge had been sustained, whether there was some sort of credibility on the part of the supervisor that forwarded these charges, or whether the complaining witness herself was making something up. It goes to the credibility of whether something, in fact, did happen. But as to whether the penalty itself is appropriate, I don't think that that enters into the equation. Douglas very clearly lays out the number of factors that need to be considered, and there's no suggestion from Petitioner or from the administrative judge that a factor wasn't considered. Oh, so what does it mean when it says bad faith, malice, or provocation on the part of others involved in the matter? Wouldn't Judge Dyke's hypothetical constitute bad faith on behalf of others involved in this matter? You're referring to factor 11? I'm referring to factor 11 on Douglas. Why isn't that applicable to Judge Dyke's hypothetical? Because, Your Honor, I think that would imply, and I think what that factor goes to, is if there was some sort of bad faith on the part of the deciding official. There's a reason that the manager involved here isn't the one deciding what the penalty is. It's a deciding official that's outside the facts of the case. And if for some reason the deciding official had some sort of bad faith, malice, or provocation, or reason for imposing the penalty it did, then that factor might be appropriate. But there's no suggestion here that the deciding official, here Mr. Manley, had any sort of bad faith, malice, or provocation. He just looked at the facts. The specifications of the charge decided that the penalty of demotion and not removal was appropriate. But that's not what it says. It doesn't say bad faith, malice, or provocation on the part of the deciding official. It says by others involved in the matter. It does, Your Honor. That's correct. And in my hypothetical, the supervisor was somebody else involved in the matter, right? Right. And that's why the Postal Service has both a separate official and a deciding official deciding what the penalty is. And what you have here, Your Honor, really is a situation where the system worked. The specifications of the charge were very serious.  The deciding official looked at all the factors, and specifically Mr. Batten's years of service, and decided instead that demotion was appropriate. Petitioner's suggestion really is that there's a more reasonable penalty. Well, that's not the standard. The standard is whether the penalty of demotion falls within the bounds of reasonableness. And I think given the specifications of the charge, I don't think there could be much dispute to that. They're very serious charges. Mr. Batten was a supervisor. And in that case, some sort of demotion to a scrap position was appropriate. The court has repeatedly held that it's not what this court or the administrative judge would do. It's what the agency would do, and the court has been very loathe to substitute its judgment for that of the deciding official. Let me ask you about the demotion here. I think I read somewhere it was to a part-time clerk position. So it's not just a downgrade in terms of level, but it's also the difference between a full-time and a part-time position. Is that correct? Well, there the deciding official is constrained by the collective bargaining agreement. The only thing that he can do if he demotes it to a craft position is to demote it to a craft position. And under the collective bargaining agreement, Mr. Batten would go in at a PS-5 part-time flexible distribution clerk. So there was no interest in the supervisor saying that this penalty ought to include a part-time rather than a full-time position? No. He was saying that was just dictated. It was simply a consideration that it should have been demoted to a craft position. And during the hearing, the deciding official was asked on cross-examination with Mr. Karatinas whether he considered moving into an EAS position, which is what the administrative judge thought was more appropriate. And he specifically said that given the charges involved here, whether the position of supervisor or not the EAS position, he thought the conduct was too serious to have somebody who did those things in the EAS position specifically decline that. Why? I mean, if it's non-supervisory, what's the difference between somebody being in EAS and somebody being in the part-time clerk position? The deciding official decided that as an EAS employee, you're a representative of the company even more so than you are as a craft employee. And whether the position is supervisor or not, EAS employees are held to a higher standard. What's the difference between the two positions? What's an EAS position? The EAS position is either a supervisor or administrative position. So it's a non-craft position with the Postal Service. And the position to which he was ultimately demoted is a craft position? Correct. And what's the difference in compensation? I don't know what the difference in compensation is in this case, Your Honor, but certainly Mr. Batten would have gotten paid less in the craft position than he would have in the EAS position that he wanted and that the AJ decided to demote him to. Is there any merit to the plaintiff's position that the agency ought to have a table to guide its discretion? No, Your Honor. Given an organization particularly as diverse and large as the Postal Service, a table of penalties, at least for the Postal Service, just isn't workable. There are agencies that have decided to employ a table of penalties, but this Court certainly hasn't raised any sort of adverse inference against agencies that don't have one. So even though two of the factors go to sort of a level, number six says consistency with that imposed on others for the same or similar offenses, and seven says consistency with applicable table penalties, do you think the Postal Service doesn't have to make any showing or any consideration of either of these? No, that's not what I'm saying, Your Honor. Well, how does it do it without a table of penalties? The table of penalties certainly can't consider its decision as a table of penalties because it doesn't have one, but it can compare the penalty imposed on other employees for the same or similar offenses, and that was done here. There was testimony on the record as to what the deciding official, in this case Mr. Manley, had done under similar circumstances, and the record reflects that in both cases where there was charges of improper conduct, as there were here, and in those cases they weren't even as serious as the charges here, he also took the action to demote those employees to craft positions. And so the deciding official did in fact consider the consistency of the penalty given here to Mr. Batten with other penalties that had been imposed by the agency, particularly himself. In regards to Petitioner's argument that the penalty wasn't reasonable, I would submit, Your Honor, that the facts here were in fact sufficient for removal, but it was only because the system here worked that the deciding official exercised discretion and looked at all the relevant factors, that in fact he decided that with an employee, particularly like Mr. Batten, who was close to retirement, not to remove him. And so Petitioner's suggestion that somehow a demotion is unreasonable doesn't really fit here because the deciding official very clearly exercised discretion properly and reduced the penalty himself. The fact that the deciding official did not reduce it as far as Petitioner would like, or that Mr. Batten would like, does not mean it's an abuse of discretion. It simply means that whether it be removal, a demotion to a craft position, or something less than that, may or may not fall within a reasonable range of penalties. But certainly under the facts of this case, a demotion to a craft position was an appropriate penalty given the circumstances. If the Court has no other questions, I can waive the remainder of my time. With respect to the current compensation on Mr. Batten, it's been basically cut in half. He is in the least senior collective bargaining position, which means he's not guaranteed any amount of time. He works six hours a day now, and some weeks he does get 40 hours. He never gets any overtime. And so this is a very, very serious action. It's half of what it would be in an EAS position. In an EAS position, he's guaranteed the 40 hours. No, but when you say it's half, you mean half of what he got in his old position or half of what he would get in an EAS position? No, but he was placed in an EAS, I've forgotten, 15, EAS 11, I believe, which is a substantial downgrade from his EAS, I think it was 18 position. And so he got a substantial cut in salary because of that. But he got a further substantial cut in salary in being demoted to craft. The heart of this case is, did the deciding official and the MSPB have a basis for relying on the deciding official? And I believe that it did not because the deciding official did not apply neutral principles in determining what the most reasonable penalty should be. The man did not know how many years of experience Mr. Batten had. He didn't investigate his allegation by even talking to Ms. McGee that he'd been sandbagged. And so the administrative judge had little recourse in the line upon the deciding official. And the board, in trying to do that for the, in lieu of what the administrative judge did, I believe committed error when they did not follow their extant body of precedent, which applies, which provides for the application of neutral principles in administrating a career service. Okay. Thank you, Mr. Carathene. Thank you. The cases are submitted and that concludes our session for today.